UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDON RESCH,

       Plaintiff,

v.

       Case No. 4:14-cv-13432
       District Judge Terrence G. Berg
       Magistrate Judge Anthony P. Patti

BAYDOUN, *et al.*,

       Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DE 41)

**I.   RECOMMENDATION**: The Court should grant in part and deny in part Defendants' motion for summary judgment.  Specifically, the motion should be denied with respect to the July 27, 2013 incident because there remains a genuine dispute of material fact as to whether Plaintiff exhausted his administrative remedies. The motion should be granted with respect to the June 27, 2013 incident and Plaintiff's claims against Defendants Officer Moore, Seargeant Boros, Ronald Jones, Robert Galloway, Deon Hargrove, Officer Rogers, Philip Kozlowski, and Linton Dixon should be dismissed without prejudice.

**II.   REPORT**

## A.  Background

Plaintiff, Brandon Marcus Resch, a state inmate, initially filed a *pro se* complaint and application to proceed without prepayment of fees on September 3, 2014.  (DE 1 and 2.)  The Court granted Plaintiff's application on September 15, 2014.  (DE 5.)  Plaintiff subsequently retained the assistance of counsel and filed an amended complaint on March 25, 2015.  (DE 29.)  In his amended complaint, Plaintiff brings claims under 42 U.S.C. § 1983, alleging that deputies of the Wayne County Jail assaulted him on two occasions when he was housed as a pretrial detainee.  Specifically, Plaintiff alleges that on June 27, 2013, he was attacked and assaulted by Defendants Moore, Boros, Jones, Galloway, Hargrove, Rogers, Kozlowski, and Dixon, and on July 31, 2013, was assaulted by Defendants Cross, Masai, Hall, and Baydoun.  (Id. at 4, ¶¶ 24-34.)  He brings a claim for excessive use of force against the deputies, and claims against Wayne County and the Wayne County Sheriff for unconstitutional policies, customs, and practices, and for inadequate training or supervision of its agents and employees.

## B.     The Instant Motion

Defendants filed the instant motion on November 5, 2015, asserting that Plaintiff's complaint should be dismissed because he failed to exhaust his administrative remedies prior to filing this lawsuit, in violation of the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a).  (DE 41.)

Specifically, Defendants posit that Plaintiff did not follow the Wayne County Jail System Inmate Grievance Procedure ("grievance procedure") because he recounted the incidents at issue on a separate form called the "Recipient Rights Complaint form," which are handled by the Office of Recipient Rights. Because of this, Defendants contend that Plaintiff's complaints failed to alert Wayne County of the problem and did not provide an opportunity to remedy the situation. Plaintiff opposes the motion, arguing that he followed the grievance procedure by signing and submitting written complaints about the incidents at issue in this lawsuit within ten days of the alleged incidents and placing those complaints in a lock box at the jail to be received by a jail social worker.

Additionally, Plaintiff urges the Court to treat this motion, which Defendant titles "Motion for Summary Judgment," as a motion to dismiss pursuant to Rule 12(b). In support, he points to multiple cases in which motions for summary judgment based on failure to exhaust were converted to "unenumerated" motions under Federal Rule of Civil Procedure 12(b). *See, e.g., Neal v. Raddatz*, No. 09-13169, 2012 WL 488827, at *2 (E.D. Mich. Jan. 12, 2012) *report and recommendation adopted*, No. 09-13169, 2012 WL 488702 (E.D. Mich. Feb. 15, 2012); *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir. 2003).

Interestingly, while Defendants label their motion as one for summary judgment, they indicate within the motion that it is brought under Rule 12(c). It

3

appears, however, that the motion is more appropriately brought under Rule 56, since it urges the Court to find that there are no material facts in dispute on an affirmative defense. Although the Court may take judicial notice of an administrative record reflecting a plaintiff's exhaustion of administrative remedies without converting a motion to dismiss into one for summary judgment, it must convert the motion to one for summary judgment where the parties rely on exhibits and matters outside of that administrative record. *Kuriakose v. Veterans Affairs Ann Arbor Healthcare Sys.*, No. 14-12972, 2015 WL 2449232, at *1 (E.D. Mich. May 21, 2015). Here, the parties both rely on exhibits outside of the administrative record reflecting Plaintiff's exhaustion of remedies, including deposition and hearing transcripts. Nevertheless, "[w]hether the Court treats this as a motion for summary judgment or an unenumerated 12(b) [or 12(c)] motion, the result will be the same: if granted, the dismissal will be without prejudice, and it will not count as a "strike" under 28 U.S.C. § 1915(g)." *Neal* at *3.

### C. <u>Standard</u>

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court

"views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

### D. Discussion

#### 1. Exhaustion of Administrative Remedies Under the PLRA

Under the PLRA, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted this provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the

agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations and citations omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 219 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The prisoner "may not exhaust his [or her] administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 US at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . ."). However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. As such,

Defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).

### 2. Wayne County Jail Grievance Procedures

Pursuant to its Operations Manual dated November 27, 2007, the administrative remedies available at the Wayne County Jail are as follows. Inmates may initiate the procedure by stating their concerns on an "Inmate Grievance Form" or on "a plain sheet of paper." (DE 41-2 at 19.) Inmates must file this document within ten days of the date of the alleged incident of complaint. This can be accomplished by signing the document and giving it to "any officer, command staff, social services specialist, nurse, mental health staff or the Quality Assurance Administrator." (DE 41-2 at 5.) A written answer to the grievance will be made within ten working days. Within ten days of receiving the grievance response, the inmate may appeal to the Director of Jails. Appeals will be answered in writing within ten working days. (DE 41-2 at 18-19.)

### 3. Plaintiff's Compliance with the Grievance Procedure

Neither party disputes that Plaintiff is subject to the exhaustion requirement set forth in the PLRA, 42 U.S.C. § 1997e(a). Nor do they dispute that Plaintiff timely completed "Recipient Rights Complaint" forms, describing the events set forth in his complaint. (DE 41-4 at 4 and 5, DE 43-2 at 2, and DE 43-3 at 2.) The issue here is a fairly narrow one: whether Plaintiff's attempts to grieve the events

described in his complaint met the requirements of the Wayne County Grievance Procedure and the aims of the PLRA.

Defendants argue that Plaintiff wrote his grievances on Recipient Rights Complaint forms, which are "handled by a social worker in the jail and forwarded to the Office of Recipient Rights," an entirely separate agency.[1] (DE 44 at 2.) Because of this, Defendants contend that the complaints failed to alert the relevant individuals of the issue in order to allow them to remedy the situations prior to the filing of this action, in violation of the aims of the PLRA. As support for this proposition, Defendants provide the affidavit of Charles Pappas, the Director of Internal Compliance for the Wayne County Sheriff's Office during the relevant time period. (DE 41-6.) Mr. Pappas affirms that the Wayne County Sheriff's Office "is not provided with Recipient Rights Complaint Forms." (Id. at ¶ 7.) Defendants contend that Plaintiff was aware of the proper procedure for filing grievances, given that he properly grieved previous issues using the correct "Inmate Grievance Form." (DE 41-3.)

Plaintiff asserts that he followed the grievance procedure as provided by Wayne County and accordingly exhausted his administrative remedies. Plaintiff points out that he filed two written complaints within ten days of each alleged

---

[1] Defendants provide a printout from the Office of Recipient Rights website, which explains that it "receives and investigates complaints involving alleged or suspected violations of the rights of people receiving mental health services." (DE 44-1.)

incident, and emphasizes that the grievance procedure does not dictate that a specific inmate grievance form be used. Instead, the policy allows inmates to submit their grievances *either* on an "Inmate Grievance Form" *or* "on a plain sheet of paper." (DE 41-2 at 19.) In addition, Plaintiff provides an excerpt of Mr. Pappas' testimony in a December 3, 2014 evidentiary hearing, in which he testified that the jail accepts grievances submitted on mediums other than the official form:

> Q.   So for example an inmate could take – take a blank piece of paper, a napkin, or anything like that and – and the Wayne County Jail would not reject it for being non-conforming?
>
> A.   That's correct. And it has happened.

(DE 43-4 at 8.) He also testified that inmates submit their completed grievances by placing them "in boxes" or turning them over to staff directly, including "officers, social workers, compliance workers[.]" (Id.) Plaintiff contends that he followed the policy because, as Defendant notes, he in fact placed his complaints in the boxes made available for this purpose and Recipient Rights Complaint forms are likewise handled by social workers. (DE 44 at 2.) Moreover, he testified at deposition that, with respect to the July 31, 2013 incident, he was "positive that [he] filed a grievance on something additionally, aside from [the] mental health Recipient Rights forms." (DE 41-5 at 20.) He noted that he "filed a formal grievance . . . concerning the July assault in the mental health ward." (Id. at 21.) He further testified that he wrote his complaint out on a grievance form and turned

10

it in to a "regular on the mental health ward." (Id.) Plaintiff conceded, however, that he was not positive he completed a grievance form for the June 27, 2013 incident. I will address the grievance procedure for each alleged incident in turn.

### a. June 27, 2013

Plaintiff's argument with respect to this incident is a somewhat compelling one, but ultimately must fail. Plaintiff specifically testified that he did "not believe that there is an additional grievance form filed with respect to the June 27, 2013 incident." (DE 41-5 at 20.) Thus, the Court only has Plaintiff's Recipient Rights Complaint describing the June 27, 2013 incident as evidence that he has exhausted his administrative remedies.

This District has held that the use of a Recipients Rights Complaint alone is not sufficient to provide notice to the Wayne County Sheriff's Grievance Administrator. *Washington v. Burks*, (J. Lawson) No. 04-cv-10352, 2008 WL 8694601, at *5 (E.D. Mich. Dec. 17, 2008) *report and recommendation adopted*, No. 04-cv-10352, 2011 WL 5375189 (E.D. Mich. Nov. 4, 2011). In *Washington*, as here, the plaintiff filed Recipient Rights Complaints describing the two incidents at issue in her complaint. The Plaintiff did not provide testimony that she had followed the proper procedure, and did not even attempt to argue that she followed the procedure until she filed objections to the Magistrate Judge's Report and Recommendation. *Washington*, 2011 WL 5375189 at **4. Accordingly, the

Court could only consider the Recipient Rights Complaints when determining whether the plaintiff had exhausted her administrative remedies. The Court held that "Plaintiff's filing of a Recipient Rights Complaint regarding any of the above allegations could not substitute for proper exhaustion." *Washington*, 2008 WL8694601 at *5. Neither party addresses the *Washington* holding. Although the unpublished decision is not binding on the Court, I find it persuasive and well-reasoned.

Further, Plaintiff's testimony that he knew the difference between "tangible grievance forms" and Recipient Rights Complaint forms, weighs against him in this instance. (DE 41-5 at 20.) The fact that he knew the difference between the two forms and only undisputedly completed the Recipients Rights Complaint form concerning the June 27, 2013 incident demonstrates that Plaintiff did not "affirmatively endeavor to comply with" the grievance process. *Risher v. Lapin*, 639 F.3d 236, 240 (6th Cir. 2011). Accordingly, I conclude that Plaintiff has not exhausted his administrative remedies by merely filing a Recipient Rights Complaint form and recommend that his claims against Defendants Moore, Boros, Jones, Galloway, Hargrove, Rogers, Kozlowski, and Dixon be dismissed and the action proceed on the July 30, 2013 incident alone.

### b. July 31, 2013

Plaintiff testified in his deposition that he was "positive that [he] filed a grievance on something additionally aside from these mental health Recipient Rights forms, positive." (DE 41-5 at 20.) He further clarified that:

> A. I can tell you I know I filed a formal grievance, if you will, concerning the July assault in the mental health ward.
> Q. Okay. Who did you filed that grievance with?
> A. As far as who did I turn it in to?
> Q. Yes.
> A. It had been the—I don't know his name but he was a regular on the mental health ward, very large African American gentleman.
> Q. What was that form filed on?
> A. If I'm not mistaken, a grievance form, but it didn't look like either of the two that you initially showed me.

(Id.) This testimony seems to demonstrate two things: 1) Plaintiff was not confused about the difference between Recipients Rights forms and grievance forms; and 2) that Plaintiff testified under oath that he filed a grievance form related to the July 30, 2013 incident and provided it to jail personnel, as was consistent with the policy.

Although Defendant counters that it has produced all of the formal grievances filed, Plaintiff's conflicting testimony under oath is sufficient to create a genuine dispute of material fact with respect to the July 30, 2013 incident. *See, e.g., Colton v. Cohen*, No. 10-cv-13073, 2013 WL 3724835, at *1 (E.D. Mich. July 15, 2013) (concluding that a motion for summary judgment would necessarily fail

because "the deposition testimony of the Plaintiff upon which Defendant purports to rely . . . demonstrates that a genuine dispute of material fact still exists."). Furthermore, the Recipient Rights form at issue describes an assault by jail officers, and does not "involve[e] alleged or suspected violations of the rights of people receiving mental health services." (DE 41-4 at 4- 5 and DE 44-1 at 2.)

In this instance, Plaintiff's ability to differentiate between the Recipient Rights and grievance processes, in addition to his testimony that he completed the correct form and gave it to jail personnel in a way consistent with the policy, weighs in his favor. Further, the Wayne County Inmate Grievance Procedure specifies that a written answer to a grievance will be provided within ten working days, to which the inmate may appeal to the Director of Jails, rendering the administrative grievance fully exhausted. (DE 41-2.) Here, Plaintiff does not testify that he received a response within the time allotted for reply and "[i]t is well established that 'administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance.'" *Risher*, 639 F.3d at 240 (quoting *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004)).

Viewing the evidence, facts, and inferences in the light most favorable to Plaintiff, the nonmoving party, I conclude that Defendants have not met their burden to demonstrate that Plaintiff's claims are unexhausted with respect to the July 31, 2013 incident. *See Surles*, 678 F.3d at 457 (concluding that the plaintiff's

14

failure to provide enough evidence to demonstrate that he exhausted his administrative remedies did "not mean that Defendants have met their[]" burden.); *see also Lowe v. Prison Health Servs.*, No. 4:13-cv-10058, 2014 WL 4604469, at *6 (E.D. Mich. Augh 15, 2014) *report and recommendation adopted*, No. 13-10058, 2014 WL 4605285 (E.D. Mich. Sept. 15, 2014) (denying defendants' motion for summary judgment because there was a genuine dispute of material fact as to whether Plaintiff exhausted his claims); *Jones v. Jensen*, No. 1:11-cv-468, 2012 WL 4501261, at *1 (W.D. Mich. Sept. 28, 2012) (recognizing that a timely and properly sworn statement that he gave grievances to prison staff (which did not occur in that case) could have been used to create a genuine issue of fact); *Knighten v. Mitcheff*, No. 1:09-cv-333, 2011 WL 96663, at *3 (S.D. Ind. Jan. 10, 2011) (finding "sufficient circumstantial evidence in the record from which to conclude that [plaintiff] filed grievances" where plaintiff testified that he filed grievances and had copies of the same, and noting that the defendants' "absence of records" defense put them in an "almost impossible bind in attempting to shoulder their burden of proof in an exhaustion affirmative defense.").[2]

---

[2] One case in this district has concluded that the plaintiff's "mere testimony at his deposition [was] insufficient to establish exhaustion." *Kotewa v. Marshall*, No. 03-cv-74087, 2006 WL 273618, at *1 (E.D. Mich. Jan. 31, 2006). However, that case was decided prior to *Surles*, 678 F.3d at 456, which clarified that defendants, and not inmate plaintiffs, bear the burden of proof on exhaustion under the PLRA.

Notwithstanding Plaintiff's testimony that he was not confused in this particular instance, I observe that Defendants' grievance procedure has some troublesome aspects. Inmates are given access to Recipient Rights Complaint forms and inmate grievance forms, both of which are submitted to the jail by the same means, but their paths apparently diverge after that point, with one going to prison officials and the other being forwarded by a jail social worker to the Office of Recipient Rights. (DE 44-1.) The title of the Recipient Rights Complaint form could have an especially prejudicial effect upon prisoners who suffer from mental disabilities, who predictably may not appreciate such subtle differences, particularly when the different forms are submitted to the same people in an identical manner. In either case, regardless of the title of the form, the County would appear to have notice of the complaint being lodged by the prisoner, and to hinge the effectiveness of that notice entirely upon the caption of the document would appear to elevate form over substance. The fact that there is no mechanism for a jail social worker—who is charged with receiving *both* types of official forms or even complaints that are written "on a plain sheet of paper" (DE 41-2 at 19)— receiving what are clearly civil rights or jail conditions complaints, and forwarding them to the appropriate jail official seems to warrant a rethinking of the policy, or possibly an explicit written warning to prisoners that Recipient Rights Complaint forms do not begin the process of administrative exhaustion.

16

### E. Conclusion

The undisputed fact that Plaintiff was aware of the difference between the Wayne County Jail's grievance forms and its Recipient Rights Complaint forms cuts both ways in this case. With respect to the June 27, 2013 incident, this fact favors Defendants, since Plaintiff is unable to verify that he filed a grievance form with respect to that incident, and claims no confusion about the purpose of the one form that he did file, namely a Recipient Rights Complaint form. With respect to the July 31, 2013 incident, Plaintiff's awareness of the difference between the two forms cuts in his favor, bolstering his statement that he filed both types of forms in one incident but not the other. Consistent with the above analysis, I recommend that the Court **GRANT IN PART AND DENY IN PART** Defendants' motion for summary judgment, dismissing Plaintiff's claims against Defendants Moore, Boros, Jones, Galloway, Hargrove, Rogers, Kozlowski, and Dixon without prejudice. (DE 41.) If the Court agrees with this conclusion, I will issue a scheduling order for the remainder of this case upon final disposition of the motion.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

17

72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 19, 2016    s/Anthony P. Patti
                            Anthony P. Patti
                            UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 19, 2016, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti
